IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

PATSY WEATHERLY, *et al.*,           §
                                      §
          Plaintiffs,                 §
                                      §
v.                                    §          Civil Action No. 3:14-CV-0366-N
                                      §
PERSHING, LLC,                        §
                                      §
          Defendant.                  §

## ORDER

This Order addresses Defendant Pershing LLC's ("Pershing") motion to dismiss [39]. The Court grants the motion in part and denies it in part.

## I. THE ORIGIN OF THE MOTION

This action arises out of the Ponzi scheme perpetrated by R. Allen Stanford, his associates, and various entities under his control (collectively, "Stanford"). The facts associated with Stanford's scheme are well established, *see, e.g.*, *Janvey v. Democratic Senatorial Campaign Comm.*, 712 F.3d 185, 188–89 (5th Cir. 2013), and will not be recounted in great depth here. At root, the scheme was based on Stanford's sale of fraudulent certificates of deposit ("CDs") through an offshore bank in Antigua, known as Stanford International Bank Limited ("SIBL"). While Stanford represented to investors that the CD proceeds were invested only in low-risk, stable funds, in reality the proceeds were funneled into speculative real estate investments and used to support Stanford's lavish lifestyle.

Plaintiffs here are former investors in Stanford's scheme. They bring suit against Pershing, a financial services firm that they allege served as clearing broker for Stanford Group Company ("SGC"). The allegations in this suit are quite similar to those raised in *Turk v. Pershing LLC*, Civil Action No. 3:09-CV-2199-N (N.D. Tex. filed Nov. 18, 2009) (the "Turk Suit"). Plaintiffs here bring claims for participation in violation of the Florida Securities Investor Protection Act (the "FSIPA"), participation in breach of fiduciary duty, negligence and gross negligence, and fraud. Defendant now moves to dismiss.

## II. THE LEGAL STANDARDS

### A. Rule 12(b)(6)

When considering a Rule 12(b)(6) motion to dismiss, a court must determine whether the plaintiff has asserted a legally sufficient claim for relief. *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To meet this "facial plausibility" standard, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court generally accepts well-pleaded facts as true and construes the complaint in the light most favorable to the plaintiff. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012). But a court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action

will not do." *Twombly*, 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. (internal citations omitted).

In ruling on a Rule 12(b)(6) motion, a court generally limits its review to the face of the pleadings, accepting as true all well-pleaded facts and viewing them in the light most favorable to the plaintiff. *See Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). However, a court may also consider documents outside of the pleadings if they fall within certain limited categories. First, "[a] court is permitted ... to rely on 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'" *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)). Second, "[a] written document that is attached to a complaint as an exhibit is considered part of the complaint and may be considered in a 12(b)(6) dismissal proceeding." *Ferrer*, 484 F.3d at 780. Third, a "court may consider documents attached to a motion to dismiss that 'are referred to in the plaintiff's complaint and are central to the plaintiff's claim.'" *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 546 (5th Cir. 2010) (quoting *Scanlan v. Tex. A & M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003)). Finally, "[i]n deciding a 12(b)(6) motion to dismiss, a court may permissibly refer to matters of public record." *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994) (citation omitted); *see also, e.g.*, *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (stating, in upholding district court's dismissal pursuant to Rule 12(b)(6), that "[t]he district court took appropriate judicial notice of publically available documents and transcripts

produced by the [Food and Drug Administration], which were matters of public record directly relevant to the issue at hand").

### B. Rule 9(b)

Federal Rule of Civil Procedure 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). In the Fifth Circuit, a plaintiff must plead "'time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby.'" *Williams v. WMX Tech., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997) (alteration in original) (quoting *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994)). In effect, Rule 9(b) requires a plaintiff to state "the who, what, when, where, and how" of alleged fraud. *Id.* at 179 (internal quotation marks omitted). "What constitutes 'particularity' will necessarily differ with the facts of each case . . . ." *Guidry v. Bank of LaPlace*, 954 F.2d 278, 288 (5th Cir. 1992)).

### III. THE COURT DISMISSES PLAINTIFFS' FSIPA CLAIMS

Plaintiffs' FSIPA claims against Pershing are based on its alleged assistance to Stanford in selling unregistered securities, and in selling securities through untruth or omissions. *See* Unredacted First. Am. Compl. ¶¶ 102, 113 [46]. In the Turk Suit, the Court dismissed plaintiffs' FSIPA claims based on the conclusion that, under Florida law, liability as an aider under the FSIPA requires "inducement." *See* Order 7–9, Dec. 8, 2014 [125], *in* the Turk Suit (the "Turk Order").

As discussed in greater detail in the Turk Order, Florida law is clear that in order to be held secondarily liable under the FSIPA, the defendant must undertake "some activity in inducing the purchaser to invest . . . ." *Nichols v. Yandre*, 9 So.2d 157, 160 (Fla. 1942). Inducement requires that the defendant "must actively and directly, rather than passively, derivatively, or by attribution or imputation, influence or induce the investor to buy." *Dillon v. Axxsys Intl, Inc.*, 385 F. Supp. 2d 1307, 1311 (M.D. Fla. 2005). In *Ruden v. Medalie*, 294 So.2d 403 (Fla. Dist. Ct. App. 1974), the plaintiff alleged secondary liability under FSIPA based on a corporate secretary signing to attest to a series of fraudulent corporate debentures. *Id.* at 405. The secretary had also told the plaintiff that the issuer was a "great guy" and seemed like he knew the markets, but the secretary had not discussed the plaintiff's investments in any way. *Id.* at 406. The court upheld the trial court's determination that this was insufficient as a matter of law to constitute inducement. *Id.*

Cognizant of the Court's ruling in the Turk Order, Plaintiffs here have clearly made an attempt to plead inducement. They allege Pershing consistently played a role in recruiting financial advisors to work with Stanford, which entailed vouching for the legitimacy of the SIBL CDs. *See, e.g*, Unredacted First. Am. Comp. ¶ 68. They also allege that Pershing sent an e-mail and information bulletin to Stanford financial advisors, which were intended to reach CD investors. *See id.* ¶ 74. Facially, however, there is nothing in these communications particular to the Stanford CDs.[1] *See id.* Ex. I, Ex. J. The communications

---

[1] The Court may consider the communications on a motion to dismiss because they are referenced in and attached to Plaintiffs' complaint.

primarily consist of information about Pershing and do not refer to the Stanford CDs.  They appear to be the sort of form communications that would be sent to any Pershing client.  And the communications are explicitly addressed to financial advisors; they were not sent to nor do they attempt to directly address investors.

The Court finds Plaintiffs' attempt to plead "inducement" falls short.  Plaintiffs do not, and apparently cannot, allege Pershing ever communicated directly with a Stanford investor.  While their argument based on the communications and the representations to Stanford financial advisors comes closer than the allegations in the Turk Suit, it still does not rise to the level of inducement as this Court understands it.  Even assuming the Stanford financial advisors could have used information particular to Pershing, distributed in the referenced communications, to sell Stanford CDs, this would still fail the requirement that inducement be "direct."  *See Dillon*, 385 F. Supp. 2d at 1311.  Simply put, the kind of inducement that might result from Stanford's financial advisors relying on Pershing's bulletins to sell CDs would seem to be passive, derivative, by attribution and imputation, not active and direct.  *See id.*  Accordingly, the Court determines that Plaintiffs have not pled inducement, as is required for secondary liability under the FSIPA.  The Court grants Pershing's motion to dismiss those claims.[2]

---

[2]Pershing also raised limitations as a defense to the FSIPA claims.  The Court expresses no opinion as to the FSIPA claims' timeliness.

## IV. THE COURT DISMISSES PLAINTIFFS' NEGLIGENCE CLAIMS

Plaintiffs also bring claims against Pershing for negligence and gross negligence. It is elementary that in order to prevail on a claim for negligence, a plaintiff must demonstrate the defendant owed her a duty of care. *Williams v. Davis*, 974 So.2d 1052, 1056 (Fla. 2007); *Praesel v. Johnson*, 967 S.W.2d 391, 394 (Tex. 1998). In the Turk Order, the Court dismissed plaintiffs' claims for negligence based on plaintiffs' failure to plead that Pershing owed them any duty of care. *See* Turk Order at 9–11. The Court noted that a substantial amount of authority indicates clearing brokers owe no duty of care to investors who are customers of their client-introducing broker. *See id.* at 10 (citing *Ross v. Bolton*, 904 F.2d 819, 824 (2d Cir. 1990); *Rozsa v. May Davis Grp., Inc.*, 187 F. Supp. 2d 123, 131–32 (S.D.N.Y. 2002); *Riggs v. Schappell*, 939 F. Supp. 321, 329–30 (D.N.J. 1996)). Again, Plaintiffs have anticipated this argument, and raise two grounds for the existence of Pershing's duty of care: (1) the NASD/FINRA conduct rules, and (2) Pershing's contract with SGC.

Plaintiffs argue the NASD/FINRA conduct rules establish a duty of care on the part of member firms, owed to investors. Plaintiffs cite a number of cases that they argue have adopted this construction of the conduct rules.[3] None of these cases, however, used the NASD/FINRA conduct rules as a basis for implying a duty of care; rather, in each, the

---

[3]*See Miley v. Oppenheimer & Co., Inc.*, 637 F.2d 318 (5th Cir. 1981); *Mihara v. Dean Witter & Co., Inc.*, 619 F.2d 814 (2d Cir. 1980); *Lange v. H. Hentz & Co.*, 418 F. Supp. 1376 (N.D. Tex. 1976); *Csordas v. Smith Barney, Harris Upham & Co., Inc.*, 1992 WL 426460 (Fla. Cir. Ct. 1992).

conduct rules were used to set the standard of care once it had already been established that the defendant owed the plaintiff a duty. *See, e.g.*, *Csordas*, 1992 WL 426460, at *1 ("The law is clear that a *securities broker* owes to his investment customer a fiduciary duty of loyalty and due care . . . ." (emphasis added)). More particularly, each of these cases featured a suit by a plaintiff against an introducing broker, who do generally owe duties of care to their clients. *See Mihara*, 619 F.2d at 817–18 (indicating that defendant firm was directly tasked with investing plaintiff's money); *Lange*, 418 F. Supp. at 1378 (explaining that defendant had actually induced plaintiffs to purchase their stocks). Thus, these cases do nothing to countenance the traditional rule that clearing brokers, as opposed to introducing brokers, do not owe common law duties to investors. Plaintiffs fail to establish that the NASD/FINRA conduct rules create a duty of care owed by clearing brokers to investors; rather, the rules may be used to determine whether a breach has occurred once it has been established that a duty of care existed.

Plaintiffs also contend Pershing's clearing agreement with SGC created a duty of care in favor of investors. Plaintiffs appear to contend this duty arises from the general rule that one who undertakes to act must do so with care. *See Union Park Mem'l Chapel v. Hutt*, 670 So.2d 64, 66–67 (Fla. 1996). But Pershing did not undertake to act on behalf of investors; Pershing's contract was with SGC. Plaintiffs do not cite any text from the clearing agreements indicating that Pershing agreed to perform any services for investors. The general rule enunciated in *Hutt* has no impact on a number of other courts' determinations, cited above, that a clearing broker owes no common law duty of care to an investor.

Accordingly, the Court grants Pershing's motion to dismiss Plaintiffs' claims for negligence and gross negligence.

## V. THE COURT DECLINES TO DISMISS PLAINTIFFS' FRAUD CLAIMS

Finally, Pershing argues that Plaintiffs have failed to plead their fraud claims with sufficient particularity to satisfy the requirements of Rule 9(b). Plaintiffs' theory of fraud is an indirect one. Pershing is not alleged to have made any misrepresentations to Plaintiffs; rather, Plaintiffs allege Pershing made fraudulent misstatements to Stanford financial advisors, which were in turn conveyed to and relied on by Plaintiffs.[4]

### A. Plaintiffs Adequately Allege the "Who" Element

Pershing takes issue with Plaintiffs' failure to allege the identities of each of the Stanford financial advisors who received the alleged fraudulent statements. Although Rule 9(b) requires particularity in pleading a fraud claim, "what constitutes 'particularity' will necessarily differ with the facts of each case . . . ." *Guidry*, 954 F.2d at 288. Here, Plaintiffs allege a wide-ranging fraud that occurred over a number of years. It would be exceptionally difficult at this stage to individually identify each financial advisor alleged to have received fraudulent statements. The Court finds Plaintiffs' allegations that a number of unnamed Stanford financial advisors were fraudulently misled by Pershing sufficient to state the "who" element of the fraud.

---

[4]Pershing notes that to the extent Florida law permits such indirect fraud claims, it typically does so in pharmaceutical sales cases. *See* Mot. Dismiss 17 & n.14. Pershing does not argue that indirect fraud claims are exclusively confined to pharmaceutical sales cases, however.

### B. Plaintiffs Adequately Allege the "When" and "Where" Elements

Pershing also argues the "when" and "where" elements are insufficiently pled. Keeping in mind the scope of the alleged fraud, the Court finds Plaintiffs' allegations sufficient to plead these elements. Plaintiffs allege Pershing recruited Stanford financial advisors from 2005 through Feburary 17, 2009, Unredacted First. Am. Compl. ¶ 64, by misrepresenting its satisfaction with the results of its due diligence on Stanford. *See id.* ¶¶ 72–74. They allege these misstatements took place electronically and in a number of specific locations. *See, e.g.*, *id.* ¶¶ 66, 70–71, 74. The Court finds these allegations sufficiently particular to satisfy the "when" and "where" elements of the fraud claim.

### C. Plaintiffs Adequately Allege the "What" Element

Plaintiffs plead the "what" element of the fraud with particularity. Plaintiffs allege that Pershing disseminated false information to Stanford financial advisors concerning the legitimacy of the SIBL CDs. *See, e.g.*, *id.* ¶¶ 68, 69, 72–74. These allegations set forth with particularity the nature of the fraudulent statements that were purportedly conveyed to Stanford financial advisors, and then to Plaintiffs.

Pershing argues these alleged misstatements are insufficient as a matter of law to support an actionable claim for fraud. Pershing cites a number of cases standing for the general proposition that statements of puffery are not actionable. *See* Mot. Dismiss 19–20. The Court determines, however, that the alleged fraudulent statements go beyond mere puffery. *See Int'l Sch. Servs., Inc. v. AAUG Ins. Co., Ltd.*, 2012 WL 5192265, at *6 (S.D. Fla. 2012) (explaining that federal courts have liberally construed statements as to the

financial status of a company to be factual in nature).  Thus, the alleged misstatements concerning the financial legitimacy of the SIBL CDs are factual in nature and can support a claim for fraud.  The Court finds Plaintiffs have adequately pled the "what" element of their fraud claims.

CONCLUSION

The Court dismisses Plaintiffs' claims for secondary violations of the FSIPA and for negligence/gross negligence.  Plaintiffs have not requested leave to replead.  In addition, Plaintiffs have already been given the opportunity to amend their complaint following this Court's dismissal of FSIPA and negligence claims in the Turk Suit.  Because these claims would continue to suffer from the same defects the Court has outlined above, the Court denies leave to replead.  *See, e.g.*, *Tucker v. United States*, 2009 WL 3047855, at *6 (N.D. Tex. 2009) (denying leave to replead where plaintiff did not request it, plaintiff had already amended once in response to motions to dismiss, and further amendment would cause unnecessary delay).  The Court declines to dismiss Plaintiffs' claims for fraud.

Signed June 23, 2015.

David C. Godbey
United States District Judge

ORDER – PAGE 11