IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| PATSY WEATHERLY, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 3:14-CV-0366-N |
| | § | |
| PERSHING, LLC, | § | |
| | § | |
| Defendant. | § | |

# MEMORANDUM OPINION AND ORDER

This Memorandum Opinion and Order addresses Defendant Pershing, LLC's ("Pershing") motion for summary judgment [129]. Because Plaintiffs' claims are time-barred, the Court grants the motion.

## I. THE ORIGINS OF THE DISPUTE

This action arises out of the Ponzi scheme perpetrated by R. Allen Stanford, his associates, and various entities under his control for several years. The facts associated with Stanford's scheme are well established, *see, e.g.*, *Janvey v. Democratic Senatorial Campaign Comm.*, 712 F.3d 185, 188–89 (5th Cir. 2013), and are not recounted in great depth here. At root, the scheme was based on Stanford's sale of fraudulent certificates of deposit ("CDs") through an offshore bank located in Antigua, known as Stanford International Bank Limited. While Stanford represented to investors that the CD proceeds were invested only in low-risk, stable funds, in reality the proceeds were funneled into speculative real estate investments and used to support Stanford's lavish lifestyle. Stanford's scheme finally came to public

light on February 17, 2009 when the Securities and Exchange Commission ("SEC") issued a report charging Stanford and his entities with fraud.

Plaintiffs here are former investors in Stanford's Ponzi scheme. They filed this suit against Pershing, a financial services firm that they allege served as clearing broker for Stanford Group Company, on November 20, 2013. The allegations in this suit are similar to those previously raised in the class action against Pershing titled *Turk v. Pershing, LLC*, No. 3:09-CV-2199-N (N.D. Tex. filed Nov. 18, 2009) (the "Turk Suit"). Initially filed in the Southern District of Florida, the instant case was subsequently transferred to this Court for pretrial proceedings as part of the Stanford multidistrict litigation. Plaintiffs assert two claims in this action: one for fraud and another for participation in a breach of a fiduciary duty. Because both claims are time-barred, the Court grants Pershing's motion for summary judgment.

## II. THE SUMMARY JUDGMENT STANDARD

Courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In making this determination, courts must view all evidence and draw all reasonable inferences in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The moving party bears the initial burden of informing the court of the basis for its belief that there is no genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When a party bears the burden of proof on an issue, she "must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in [her] favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis omitted). When the nonmovant bears the burden of proof, the movant may demonstrate entitlement to summary judgment by either (1) submitting evidence that negates the existence of an essential element of the nonmovant's claim or affirmative defense, or (2) arguing that there is no evidence to support an essential element of the nonmovant's claim or affirmative defense. *Celotex*, 477 U.S. at 322–25.

Once the movant has made this showing, the burden shifts to the nonmovant to establish that there is a genuine issue of material fact such that a reasonable jury might return a verdict in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Moreover, "[c]onclusory allegations, speculation, and unsubstantiated assertions" will not suffice to satisfy the nonmovant's burden. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc). Indeed, factual controversies are resolved in favor of the nonmoving party "'only when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts.'" *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999) (quoting *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995))..

### III. THE COURT GRANTS PERSHING'S MOTION

Pershing moves for summary judgment on both of Plaintiffs' claims on the grounds that (1) both claims are time-barred, (2) Plaintiffs cannot establish any of the elements of

their fraud claim, and (3) Plaintiffs' participation in a breach of a fiduciary duty claim fails on the merits. In holding that both claims are indeed time-barred, the Court need not – and thus does not – reach Pershing's alternative grounds for summary judgment.[1]

### A. Plaintiffs' Fraud Claim is Time-Barred

Under Florida law, fraud claims are subject to a four-year statute of limitations. *See* FLA. STAT. § 95.11(3)(j) (1991); *see also Goodwin v. Sphatt*, 114 So. 3d 1092, 1094 (Fla. Dist. Ct. App. 2013). Although claims generally begin to accrue when the last element of the cause of action occurs, Florida applies the delayed discovery doctrine to fraud claims. *Davis v. Monahan*, 832 So. 2d 708, 709 (Fla. 2002). Under this doctrine, a fraud claim does not accrue until the plaintiff discovers, or reasonably should have discovered with the exercise of due diligence, the facts giving rise to the claim. *Hearndon v. Graham*, 767 So. 2d 1179, 1184 (Fla. 2000).

Plaintiffs filed the instant action on November 20, 2013. Thus, absent any tolling, this action is timely if, at the earliest, Plaintiffs first discovered, or reasonably should have discovered, the facts giving rise to their fraud claim on November 20, 2009. On one hand, Pershing argues that Plaintiffs' fraud claim began accruing on February 17, 2009 when the SEC first publicly reported Stanford's scheme. Plaintiffs, on the other hand, contend that

---

[1] Because each concerns Pershing's alternative grounds for summary judgment, the Court denies Plaintiffs' motion for leave to file notice of supplemental authority [138], Pershing's motion for leave to file first notice of supplemental authority [146], and Pershing's motion for leave to file second notice of supplemental authority [150]. Accordingly, the Court also denies as moot Plaintiffs' motion to strike Pershing's motion for leave to file first notice of supplemental authority [147].

they neither discovered nor reasonably should have discovered Pershing's role in the scheme until November 18, 2009 when the Turk Suit was filed. But, even assuming Plaintiffs' fraud claim did not begin accruing until November 18, 2009, their claim is still two days untimely.

As a result, Plaintiffs resort to tolling doctrines in an attempt to render their fraud claim timely. In particular, Plaintiffs offer three such doctrines: tolling under *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974); tolling while the Turk Suit was stayed pending an appeal; and equitable tolling due to fraudulent concealment. However, each of these tolling doctrines is unavailing.

***1. American Pipe Tolling Is Inapplicable to Florida State Law Claims.*** – Under *American Pipe*, individual claims are tolled during the pendency of a class action suit until class certification is denied or the individual ceases to be a class member. *See* 414 U.S. at 554; *see also Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 350 (1983). Here, Plaintiffs invoke *American Pipe* tolling from November 18, 2009, the date the Turk Suit was filed before this Court, to June 25, 2010, the date the class definition in the Turk Suit was modified to exclude Plaintiffs. Allowing this approximately seven-month period of tolling would render Plaintiffs' fraud claim timely. But, unfortunately for Plaintiffs, *American Pipe* tolling is inapplicable to Florida state law claims.

Time limitations on legal actions in Florida are governed by the provisions of chapter 95 of the Florida Statutes. *Major League Baseball v. Morsani*, 790 So. 2d 1071, 1075 (Fla. 2001). In particular, section 95.051 "delineates an *exclusive* list of conditions" that can toll

the running of the statute of limitations. *Id.* (emphasis added). In relevant part, section 95.051 reads as follows:

> (1) The running of the time under any statute of limitations . . . is tolled by:
>
>> (a) Absence from the state of the person to be sued.
>>
>> (b) Use by the person to be sued of a false name that is unknown to the person entitled to sue so that process cannot be served on him.
>>
>> (c) Concealment in the state of the person to be sued so that process cannot be served on him.
>>
>> (d) The adjudicated incapacity, before the cause of action accrued, of the person entitled to sue. In any event, the action must be begun within 7 years after the act, event, or occurrence giving rise to the cause of action.
>>
>> (e) Voluntary payments by the alleged father of the child in paternity actions during the time of the payments.
>>
>> (f) The payment of any part of the principal or interest of any obligation or liability founded on a written instrument.
>>
>> (g) The pendency of any arbitral proceeding pertaining to a dispute that is the subject of the action.
>>
>> (h) The minority or previously adjudicated incapacity of the person entitled to sue during any period of time in which a parent, guardian, or guardian ad litem does not exist, has an interest adverse to the minor or incapacitated person, or is adjudicated to be incapacitated to sue; except with respect to the statute of limitations for a claim for medical malpractice as provided in § 95.11. In any event, the action must be begun within 7 years after the act, event, or occurrence giving rise to the cause of action.
>
> . . .
>
> (2) *No disability or other reason shall toll the running of any statute of limitations except those specified in this section . . . .*

FLA. STAT. § 95.051 (1991) (emphasis added). Notably, the above list excludes tolling based on the pendency of a class action, as *American Pipe* tolling provides. And none of the enumerated grounds for tolling applies to the instant case.

Despite this clear statutory language, the parties still disagree about whether *American Pipe* tolling can apply to Florida state law claims. Both sides point to conflicting case law on the issue. *Compare* Pershing's Mem. in Supp. of Mot. for Summ. J. ("Persh.'s Mot.") 16–17 [129-2] (collecting cases declining to apply *American Pipe* tolling to Florida claims) *with* Pls.' Mem. in Opp. to Pershing's Mot. for Summ. J. ("Pls.' Resp.") 38–39 [130-1] (collecting cases allegedly applying *American Pipe* tolling to Florida claims). But neither side can cite an instance of a Florida state court, much less the Supreme Court of Florida, explicitly applying or declining to apply *American Pipe* tolling. Thus, as a transferee court adjudicating this case based on diversity jurisdiction, this Court must make an *Erie* determination as to what Florida's highest court would decide if it were to address the issue itself. *See Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938).

Based on the clear language of the Florida Statutes, this Court holds that *American Pipe* tolling does not apply to Florida state law claims. The District of Columbia Circuit's decision in *In Re Vitamins Antitrust Litigation* succinctly explains this Court's reasoning:

> The Florida legislature has enumerated eight scenarios in which the applicable statute of limitations is tolled, and a pending class action is not one of them. FLA. STAT. § 95.051(1) (1991). The statute itself makes clear that "[n]o disability or other reason shall toll the running of any statute of limitations except those specified in this section [or in certain other sections not relevant here]." FLA. STAT. § 95.051(2) (1991) (emphasis added). Also, the Florida Supreme Court has plainly stated this list represents the "exclusive list of conditions that can 'toll' the running of the statute of limitations." *Major*

> *League Baseball*, 790 So. 2d at 1075; *see also HCA Health Servs. of Fla., Inc. v. Hillman*, 906 So. 2d 1094, 1100 (Fla. Dist. Ct. App. 2004) ("Implicit in the court's holding [in *Major League Baseball*] is the conclusion that in order for a doctrine to 'toll' the statute of limitations, it must be included in the exclusive list of conditions set forth in section 95.051(1).").

183 F. App'x 1, 2 (D.C. Cir. 2006) (cleaned up). At least one sister circuit and two other district courts – including one in Florida – have held the same. *See Becnel v. Deutsche Bank, AG*, 507 F. App'x 71, 73 (2d Cir. 2013) ("Florida does not allow tolling during the pendency of class action lawsuits no matter where they are filed." (citing FLA. STAT. § 95.051(2) (1991))); *Senger Bros. Nursery v. EI Dupont de Nemours & Co.*, 184 F.R.D. 674, 682–83 (M.D. Fla. 1999) (explicitly declining to apply *American Pipe* tolling to Florida state law claims, including fraud); *Dineen v. Pella Corp.*, 2015 WL 6688040, at *2–4 (D.S.C. Oct. 30, 2015) (holding that section 95.051 of the Florida Statutes precludes *American Pipe* tolling and distinguishing cases allegedly to the contrary). Indeed, even *American Pipe* recognized the need for courts to defer to legislative purpose. *See* 414 U.S. at 559 (holding that federal courts have the power "to hold that the statute of limitations is tolled under certain circumstances *not inconsistent with the legislative purpose*" (emphasis added)). Here, the Florida legislature has clearly spoken on the issue and this Court is bound by its language. *American Pipe* tolling hence does not apply here.[2]

---

[2] Even if *American Pipe* tolling did apply to Florida state law claims, it would not apply here, where Plaintiffs seek cross-jurisdictional tolling. *See Dineen*, 2015 WL 6688040, at *4 ("Moreover, even if the courts in *Engle v. Liggett Group, Inc.*, 945 So. 2d 1246, 1277 (Fla. 2006), and *Lance v. Wade*, 457 So. 2d 1008, 1011 (Fla. 1984), adopted class action tolling, they certainly did not adopt cross-jurisdictional class action tolling, which would be required to toll the statutes of limitations in this case . . . . The *Sacred Heart* Court even acknowledged that "[c]ases involving cross-jurisdictional tolling provide less justification

***2. The Stay of the Turk Suit Did Not Affect Plaintiffs' Claim.*** – Plaintiffs next argue that the statute of limitations was tolled from September 30, 2011 to May 21, 2012 while the Turk Suit was stayed pending an appeal in a related case. Allowing this nearly eight-month period of tolling would render Plaintiffs' fraud claim timely. But, as an initial matter, such tolling due to a stay is not included on the exclusive list in section 95.051 of the Florida Statutes. As a result, for the same reason that *American Pipe* tolling is inapplicable here, so too is this tolling theory. Moreover, even if such tolling was allowed in Florida, Plaintiffs were not subject to the stay. Plaintiffs themselves concede that they were no longer members of the proposed class in the Turk Suit as of June 25, 2010. It would be nonsensical for Plaintiffs to be entitled to tolling based on a stay that did not apply to them.

Perhaps recognizing the futility of their argument, Plaintiffs misleadingly characterize the scope of the stay at issue. In their response, Plaintiffs cite *United States v. Brichat* for the proposition that a "stay or other legal proceeding that prevents a party from exercising a legal remedy can be held to toll the operation of a statute of limitations." 129 B.R. 235, 238 (D. Kan. 1991). However, the stay here was not of "all Stanford [multidistrict litigation] proceedings" as Plaintiffs claim, Pls.' Resp. 39 [130-1], but instead only of the Turk Suit. *See* Order [69] in the Turk Suit. During the pendency of the stay, Plaintiffs were therefore not prevented from "exercising any legal remedy," *Brichat*, 129 B.R. at 238, such as filing a new lawsuit, thereby undercutting the tolling rationale they proffer. Because the stay in the

---

for tolling." *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 2008 WL 2385506, at *3 n.9 (N.D. Fla. June 9, 2008). Therefore, the Court finds that Florida law does not allow for cross-jurisdictional class action tolling . . . ." (cleaned up)).

Turk Suit did not impact Plaintiffs' claim, they are not entitled to tolling on the basis of that stay.

*3. Plaintiffs Were Too Late Even If Equitable Tolling Based on Fraudulent Concealment Applied.* – Plaintiffs finally contend that, even if their fraud claim accrued on February 17, 2009 when the SEC first publicly reported Stanford's scheme, the statute of limitations was tolled for nine months because Pershing fraudulently concealed its involvement in the scheme. In support of this argument, Plaintiffs point to an allegedly misleading affidavit Pershing provided the SEC on February 12, 2009. Although Plaintiffs do not state the exact end date of this equitable tolling period, it would have ended no later than November 18, 2009 when, as Plaintiffs claim, they became aware of Pershing's involvement in Stanford's scheme when the Turk Suit was filed. But, even if this equitable tolling applied, Plaintiffs' fraud claim, first filed on November 20, 2013, would be untimely by two days. The Court thus need not determine whether Plaintiffs are entitled to equitable tolling due to Pershing's fraudulent concealment. Either way, Plaintiffs' fraud claim is foreclosed as a matter of law.

### B. Plaintiffs' Participation in a Breach of a Fiduciary Duty Claim is Time-Barred

The parties agree that claims for participation in a breach of a fiduciary duty in Florida are subject to a four-year statute of limitations. *See Am. Home Assur. Co. v. Weaver Aggregate Transp., Inc.*, 990 F. Supp. 2d 1254, 1271 (M.D. Fla. 2013) ("Claims for breach of fiduciary duty in Florida are subject to a four-year statute of limitations . . . ."); FLA. STAT. § 95.11(3)(o) (1991) (stating that "any other intentional tort" shall be commenced within four

years). The parties disagree, however, as to whether such claims are subject to the delayed discovery rule. On the one hand, Pershing argues that the delayed discovery rule does not apply and thus Plaintiffs' participation in a breach of a fiduciary duty claim began accruing on February 17, 2009 when the SEC first publicly reported Stanford's scheme. *See* Persh.'s Mot. 14–15 [129-2]. Plaintiffs, on the other hand, contend that the delayed discovery rule applies and therefore Plaintiffs' participation in a breach of a fiduciary duty claim did not begin accruing until November 18, 2009 when Plaintiffs first discovered Pershing's role in the scheme with the filing of the Turk Suit. *See* Pls.' Resp. 36 [130-1]. But, even assuming Plaintiffs are correct that the delayed discovery doctrine applies to this claim and it hence did not begin accruing until November 18, 2009, their claim – filed on November 20, 2013 – is still two days untimely.

As a result, Plaintiffs require a tolling doctrine to render their participation in a breach of a fiduciary duty claim timely. To this end, Plaintiffs offer three such doctrines: *American Pipe* tolling, tolling while the Turk Suit was stayed pending an appeal, and equitable tolling due to fraudulent concealment. But, as explained previously, each of these tolling doctrines is unavailing in the instant case. *See supra* sections III(A)(1)–(3). Plaintiffs' participation in a breach of a fiduciary duty claim is therefore also foreclosed as a matter of law.

## CONCLUSION

Because both of Plaintiffs' claims in this case are time-barred, the Court grants Pershing's motion for summary judgment. By separate document of this same date, the Court issues final judgment for Pershing.

Signed July 12, 2018.

David C. Godbey
United States District Judge